# NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

James D. NELSON, Jr.,

Plaintiff,

v.

K. MANSFIELD, et al.,

Defendants.

Case No.:  25-cv-3237-AGS-KSC

**ORDER GRANTING MOTIONS TO PROCEED IN FORMA PAUPERIS (ECF 2, 5) AND SCREENING COMPLAINT**

In this 42 U.S.C. § 1983 civil-rights suit, unrepresented plaintiff/inmate James D. Nelson, Jr., claims a group of correctional officials at Richard J. Donovan Correctional Facility used excessive force against him on two separate occasions. (ECF 1, at 1, at 4–7.) He did not pay the filing fee, but instead has filed two requests to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915(a). (ECF 2, 5).

For the reasons explained, the Court grants Nelson's motions to proceed IFP, screens his complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), and concludes it alleges plausible excessive-force claims against some of the defendants. But Nelson fails to allege a plausible claim for relief based on equal protection or any other basis, so the Court gives him the option to either amend or proceed with only his excessive-force claims.

## MOTION TO PROCEED IFP

Anyone instituting a civil action in a district court of the United States must typically pay a filing fee of $405—consisting of a $350 statutory fee plus an additional $55 administrative fee—although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP. *See*

1

*Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' … the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners." *Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 767 (9th Cir. 2023). Namely, "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner 'shall be required to pay the full amount of a filing fee.'" *Id.* (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)–(2)). First, prisoners must submit a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). Next, the Court assesses an initial payment of 20% of the greater of (a) "the average monthly deposits to the prisoner's account" or (b) "the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint." *See* 28 U.S.C. §§ 1915(b)(1) & (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Unless the prisoner has no assets, prisoners who proceed IFP must pay the initial partial assessed fee and whatever balance remains in installments regardless of whether their case is ultimately dismissed. 28 U.S.C. § 1915(b)(1) & (2); *Bruce*, 577 U.S. at 84.

Nelson's prison certificate and trust account statement show he had an average monthly balance of $1.09 during the 6-month period preceding the filing of his complaint, along with no deposits and an available balance of zero at the time of filing. (ECF 3, at 2, 3.) So, the Court finds Nelson cannot pay any initial filing fee, grants his IFP motions, and orders payment of the entire fee balance in installments. *See* 28 U.S.C. § 1915(b)(2); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2022) ("[U]nder [28 U.S.C. § 1915(b)(4)'s] safety-valve provision, '[i]n *no* event shall a prisoner be prohibited from bringing a civil action ... for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.'").

25-cv-3237-AGS-KSC

**SCREENING**

**A.   Legal Standard**

Because Nelson is a prisoner and is proceeding IFP, his complaint requires preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint," if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)); *see also Hebrard v. Nofziger*, 90 F.4th 1000, 1006–07 (9th Cir. 2024) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)). "The standard for dismissal for prisoner claims at screening is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Long v. Sugai*, 91 F.4th 1331, 1336 (9th Cir. 2024) (citing *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012)); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (Section 1915A screening "incorporates the familiar standard applied in the contest of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).").

Federal Rule of Civil Procedure 8 "prescribes the information a plaintiff must provide about the merits of his claim at the outset of litigation." *Berk v. Choy*, 607 U.S. __, 146 S. Ct. 546, 553 (2026). Together Rules 8 and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are unnecessary, but "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* Dismissal "under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Valame v. Trump,* 157 F.4th 1172, 1173 (9th Cir. 2025) (per curiam).

25-cv-3237-AGS-KSC

**B.      Plaintiff's Allegations**

On April 27, 2025, Nelson, who is a participant in the "CDCR Mental Health Program known as EOP," alleges he approached Sgts. Mansfield and Soto in Donovan Correctional Facility's A-Yard Program Office to report he was in physical danger and had been threatened by other prisoners due to his schizophrenia and exhibitionism. (ECF 1, at 4.) Instead of protecting him, however, Nelson claims Mansfield and Soto yelled at him and ordered him to return to his building. "Fearing for [his] safety," Nelson refused. (*Id.*) When Mansfield and Officer Hazel[1] attempted to place him in wrist restraints "using force," Nelson withdrew and "without violence … used both arms to make an 'X' across [his] chest," so that "they couldn't handcuff [him] and escort [him] back to the dangers [he] faced." (*Id.*) At this point, according to Nelson, defendants Mansfield, Hazel, and Officer Herrera, "slam[med]" him down on the concrete, grabbed his arms, and engaged in a physical struggle to cuff him and "drag [him] back to danger." (*Id.* at 4–5.) During the scuffle, Nelson claims to have feared for his life, but held his arms in a defensive position and only "resisted without violence or assault." (*Id.*) Still, he claims Mansfield, later joined by Officer Saucedo, struck him at least three times in the temple with a closed fist with force that "could have paralyzed [him]," while Herrera "deliver[ed] five blows or punches to [his] rib cage [and] torso." (*Id.* at 5–6.)

As a result of being "beaten like a drum," Nelson claims to have become dizzy and to have suffered from cuts, scratches, swelling, pain, and "active bleeding." (*Id.* at 4, 5.) When he was initially evaluated by RN Ernest O, he claims the nurse "forged [his] medical report 7219" and "den[ied] [him] medical care." (*Id.* at 6; *see also* ECF 1-2, at 2.) Once he was transferred to the Triage and Treatment Area, however, Nelson says a different nurse completed the proper forms. (ECF 1 at 6.)

---

[1] Plaintiff refers to both Correctional Officers "Hazel" and "Bergmann-Hazel" in his complaint, but the Court presumes they are the same person. (*See* ECF 1 at 3; *cf.*, ECF 1 at 4, 5.)

25-cv-3237-AGS-KSC

Nearly five months later, on September 2, 2025, Nelson alleges he again "got into a physical altercation," but this time with a fellow prisoner. (ECF 1 at 7.) "Before [he] could strike a blow," Nelson heard a verbal order to "Get Down!" (*Id.*) But before he could respond, Nelson felt a sharp pain in his right rib cage and realized Officer Hernandez had shot him. (*Id.*) Nelson offers no other factual description of the events before or after, but he claims to now have a golf-ball-sized gunshot wound on his rib cage. (*Id.*) Due to Hernandez's "malicious act," Nelson also allegedly suffers from pain in his lungs when he exercises or breathes deeply. (*Id.*)

Based on both these incidents, Nelson now sues Mansfield, Soto, Hazel, Hernandez, Herrera, Saucedo, and Ernest O under § 1983 and seeks $1.3 million in damages based on claims that they used excessive force against him and denied him equal protection under the Eighth and Fourteenth Amendments. (ECF 1, at 4, 7.)

## C.    Discussion

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation omitted). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)).

### 1.    Under Color of State Law

Nelson claims all defendants were employed as correctional and medical-care officials at Donovan Correctional Facility and acted in their individual capacities as peace officers (or as a nurse) at the times he was injured. (ECF 1 at 2–3.) So, Nelson's claims satisfy § 1983's "under color of State law" requirement. *See Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015) (noting § 1983's "under color" element is generally satisfied "when a state employee[] . . .  wrongs someone 'while acting in his official capacity or while exercising his responsibilities pursuant to state law'") (quoting *West v. Atkins*, 487 U.S. 42,

5

50 (1988)).

### 2. Eighth Amendment Claims

The Court concludes that Nelson alleges facts sufficient to plausibly show that Mansfield, Hazel, Hernandez, Herrera, and Saucedo violated the Eighth Amendment's proscription of cruel and unusual punishment by forcibly cuffing and shooting him. The Eighth Amendment forbids "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). Factors relevant to this inquiry include: "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (quoting *Whitley*, 475 U.S. at 1085). The sadistic and malicious use of force to cause harm violates the Eighth Amendment regardless of "whether or not significant injury is evident." *Id.* at 9–10.

Assuming the truth of Nelson's version of the April 27 events, as this Court must, Mansfield dismissed his reported safety concerns, slammed him to the ground, and together with Hazel, Herrera, and Saucedo, repeatedly punched him in the head and torso despite his efforts to "resist[] without violence." (ECF 1, at 4, 5.) These allegations plausibly suggest these defendants used more force than necessary to ensure Nelson's compliance or resolve any obvious threat he may have posed to security. *See Kendall v. Galindo*, No. 23-CV-02709-HSG, 2023 WL 4372700, at *2 (N.D. Cal. July 6, 2023) (finding allegations that correctional officers "yanked" the arms and shoulders of a non-resistant prisoner already cuffed from behind, "dragged" him across the floor, and then repeatedly "slammed him face-first into the floor" after he requested to speak to a supervisor sufficient to state a cognizable Eighth Amendment claim of excessive force); *Passineau v. Oxborrow*, No. 1:12-CV-01894 LJO, 2013 WL 5305751, at *4 (E.D. Cal. Sept. 19, 2013) (finding

Case 3:25-cv-03237-AGS-GC   Document 7   Filed 04/14/26   PageID.84   Page 7 of 11

prisoner's excessive-force claims sufficient to survive screening where prisoner claimed "he did not offer any resistance," and yet "all three Defendants placed him in handcuffs, lifted him to his feet, and slammed his face into the cell walls on either side of his cell").

The Court must also assume as true that Hernandez shot Nelson in the ribs on September 2 before he ever struck or punched anyone—or even had a chance to comply with Hernandez's orders to get down. These allegations suffice to show that the amount of force deployed under the circumstances was excessive. *See Marquez v. Gutierrez*, 322 F.3d 689, 692 (9th Cir. 2003) ("To shoot a passive, unarmed inmate standing near a fight between other inmates, none of whom was armed, when no inmate was in danger of great bodily harm, would inflict unnecessary and wanton pain."). While Nelson admits he was *about* to get into a "physical altercation with another prisoner," he adds that he never struck anyone, and yet was shot in the ribs without first having the chance to disengage. (ECF 1, at 7); *see also Avratin v. Bermudez*, 420 F. Supp. 2d 1121, 1125 (S.D. Cal. 2006) (concluding that plaintiff made a showing of an Eighth Amendment violation where a correctional officer "fired a wooden projectile from a 37mm launcher directly at an unarmed inmate involved in a fight with another inmate causing a severe injury to the inmate's leg.").

As for Soto, however, the Court finds Nelson's allegations insufficient—for he merely alleges Soto "yelled and screamed" in response to his initial report of safety concerns on April 27. (ECF 1, at 4.) Critically, plaintiff does not allege any facts suggesting Soto joined in the fray nor ordered anyone else to forcibly cuff or slam Nelson to the concrete. Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim under the Eighth Amendment. *See Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), *opinion amended on*

*denial of reh'g,* 135 F.3d 1318 (9th Cir. 1998); *see also Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action).

Last, Nelson includes RN Ernest O as a party, but alleges only that the nurse "forged" the medical report taken after he was beaten on April 27 and failed to treat his injuries. (ECF 1, at 6.) Assuming Plaintiff intends to assert an Eighth Amendment inadequate-medical-care claim, he fails to include sufficient factual content to plausibly give rise to such a claim against Ernest O. To the extent he notes Ernest O failed to accurately report his injuries on the CDCR Form 7219, he has no independent constitutional right to "accurate medical records." *See Crisp v. Wasco State Prison*, No. 13-01899-SKO (PC), 2015 WL 3486950, at *5 (E.D. Cal. June 2, 2015) (citations omitted). To the extent he faults Ernest O for failing to treat him, Nelson fails to allege any facts to plausibly show the nurse acted with "deliberate indifference" to his serious medical needs. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Id.* Here, Nelson contends Ernest O evaluated him immediately after the April 27 incident, and while he faults the nurse for initially failing to accurately report all his injuries, he admits he was nevertheless treated once he got to the Triage and Treatment Area, and he alleges no facts to plausibly suggest Ernest O's "forged" form caused him any harm. (*See* ECF 1-2, at 1 (CDCR 7506 "Provider Telephone/Consultation Note")); *Bossardet v. Centurion Healthcare*, No. CV-21-00179-TUC-RM, 2024 WL 4534618, at *26 (D. Ariz. Mar. 27, 2024) (finding that a physician's failure to document pain "may have been dishonest and unprofessional" but did not rise to deliberate indifference because it did not alter the course of treatment).

In sum, Nelson's Eighth Amendment excessive-force claims against Mansfield, Hazel, Hernandez, Herrera, and Saucedo are sufficient to meet the "low threshold for proceeding past the screening stage," but his Eighth Amendment claims against Soto and Ernest O are not. *See Wilhelm*, 680 F.3d at 1123.

### 3.    Fourteenth Amendment Equal-Protection Claims

Finally, Nelson also cites the Fourteenth Amendment as a basis for all his claims, but summarily concludes only that he was not provided "equal protection." (ECF 1, at 4, 7.) "The Equal Protection Clause requires the State to treat all similarly situated people equally. This does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citations omitted). "To prevail on an Equal Protection claim brought under § 1983, Plaintiffs must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against them based upon membership in a protected class." *Id.* (citation omitted); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, [and] national origin" as examples of characteristics protected by the Equal Protection Clause). Neither indigent prisoners nor the mentally disabled are considered a suspect class for equal protection purposes. *See Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999) ("[I]ndigent prisoners are not a suspect class."); *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) ("For the purposes of equal protection analysis, the disabled do not constitute a suspect class.")

So, even though Nelson is indigent, a prisoner, and a participant in the CDCR's Mental Health Services Delivery System, he includes no factual allegations in his complaint to plausibly suggest any defendant intentionally discriminated against him because of a protected status. Thus, his equal-protection cause of action is dismissed for failure to state a claim. *See e.g.*, *Reeb v. Thomas*, 636 F.3d 1224, 1229, n.4 (9th Cir. 2011) (affirming dismissal of equal-protection claim when plaintiff did not present any facts demonstrating that he was treated differently from others who were similarly situated to him).

### 4.    Summary and Nelson's Options

Because only some of Nelson's Eighth Amendment excessive-force claims are sufficiently pleaded, and it is not "absolutely clear" no amendment could cure his remaining pleading deficiencies, *see Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir.

25-cv-3237-AGS-KSC

2015), he may proceed either by: (1) notifying the Court of his intent to proceed only with the Eighth Amendment excessive force claims he has adequately alleged against Mansfield, Hazel, Hernandez, Herrera, and Saucedo; or (2) filing an amended complaint that includes all his adequately pleaded claims and corrects all the deficiencies of pleading identified in this order. Nelson must choose one of those two options no later than June 1, 2026. If Nelson notifies the Court that he wishes to proceed only with the excessive force claims that have survived screening, the Court will issue an order directing the Clerk to issue a summons upon defendants Mansfield, Hazel, Hernandez, Herrera, and Saucedo, and it will direct the U.S. Marshal to effect service on his behalf pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3). But all remaining claims, including those originally alleged against defendants Soto and RN Ernest O, will remain dismissed from this action.

On the other hand, if Nelson chooses to file an amended complaint, that pleading will be subject to another preliminary screening before the Court determines whether U.S. Marshal Service upon any defendant is warranted. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). If Nelson does nothing, the Court will dismiss the case based on his failure to prosecute in compliance with a court order.

## CONCLUSION

Thus, the Court orders as follows:

1. Nelson's motions to procced IFP are **GRANTED**.

2. The Secretary of the CDCR, or his designee, must collect from Nelson's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10. *See* 28 U.S.C. § 1915(b)(2).

3. The Clerk of Court must serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4. Other than Nelson's excessive-force claims against defendants Mansfield,

25-cv-3237-AGS-KSC

Hazel, Hernandez, Herrera, and Saucedo—which survive—the complaint's other causes of action are all **DISMISSED** for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1).

5. By **June 1, 2026**, Nelson must either: (a) notify the Court of his intent to proceed only with his surviving excessive-force claims against defendants Mansfield, Hazel, Hernandez, Herrera, and Saucedo; or (b) file an amended complaint that cures the deficiencies noted above. Defendants not named and any claim not re-alleged in the amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

Dated:  April 14, 2026

_____
Hon. Andrew G. Schopler
United States District Judge

25-cv-3237-AGS-KSC